UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| STACY R. GUFFEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 19-CV-0328-CVE-JFJ |
| | ) | |
| JASON McCLAIN, in his official capactiy | ) | |
| as Sheriff of Nowata County, Oklahoma, | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION AND ORDER

On June 21, 2019, plaintiff Stacy R. Guffey filed a complaint against Mirta Hallett, then-Sheriff of Nowata County, in her official capacity as the final policymaker for the Nowata County Sheriff's Department (NCSD).[1]  In plaintiff's complaint (Dkt. # 2), she states two claims for relief arising out of the Americans with Disabilities Act (ADA).  First, plaintiff alleges defendant unlawfully discriminated against her, in violation of 42 U.S.C. § 12112(a).  Second, plaintiff alleges that her termination was unlawful retaliation for protected activity under the ADA, in violation of 42 U.S.C. § 12203.

Now before the Court are cross-motions for summary judgment.  In defendant's motion (Dkt. # 24), defendant asserts as to count one that plaintiff cannot establish a prima facie case of discrimination because she failed to demonstrate she was able to perform her job with or without accommodation, and because her termination was not the result of disability discrimination.

---

[1]     Jason McClain has since replaced Mirta Hallet as sheriff, and has been substituted as defendant in this action. However, NCSD is the real party in interest. For clarity, this Court will refer to NCSD as "defendant" herein.

Defendant further asserts that the rationale behind plaintiff's termination was not pretext.  Finally, defendant argues as to count two that plaintiff cannot show that her termination was retaliation for any protected activity.   Plaintiff responds (Dkt. # 28), that defendant unlawfully impeded the interactive process of resolving issues regarding accommodations for plaintiff's disability, and that her termination was a response to plaintiff involving her attorney in the process, claiming that retaliation is evidenced by the temporal proximity between plaintiff's identification of counsel and subsequent termination.   Defendant replies (Dkt. # 31) that plaintiff lost the right to assert that defendant did not discuss reasonable accommodations when plaintiff did not attend a scheduled meeting with defendant.   Defendant also reiterates that plaintiff failed to demonstrate defendant's purported reasons for terminating plaintiff were false or otherwise pretextual.

In plaintiff's motion for summary judgment (Dkt. # 25), plaintiff argues that she has established a prima facie case of disability discrimination as a matter of law.  Plaintiff further argues that defendant did not make a reasonable effort to accommodate plaintiff's disability because defendant cut the interactive process short by refusing to communicate with, and subsequently terminating, plaintiff.   Additionally, plaintiff asserts that the evidence supports a finding that her termination was retaliatory, and that the stated reasons for her termination were pretextual. Defendant responds (Dkt. # 29) by incorporating the arguments from its motion, and further stating that there is no evidence that plaintiff's termination was the result of her disability, that plaintiff was not retaliated against for hiring an attorney, and that plaintiff's termination was not pretextual. Plaintiff did not file a reply in support of her motion.

## I.

The summary judgment record demonstrates the following:  plaintiff has had epilepsy since childhood and addresses it though medication.  Dkt. ## 25, at 9; 29, at 5.  On or before November 15, 2016, plaintiff applied for the position of dispatcher at NCSD.  As part of the application process, then-sheriff Richard Miller made inquiries into plaintiff's background prior to hiring her.  Dkt. # 25-4, at 2.  During that inquiry, Miller became aware that plaintiff had been charged with making a false declaration in Tulsa County, Oklahoma, on or about December 11, 2015.  Id.  He also became aware that the charge had been dismissed in February 2016 by the state of Oklahoma.  Id.  Miller attested to the fact that he knew that, as a result of that dismissal, plaintiff was entitled to have the matter expunged.  Id.  In light of that fact, Miller advised plaintiff to indicate on her employment application that she had not ever been arrested "for an alleged commission of a felony."  Id.  That day, then-undersheriff Billy Scott obtained a criminal history record detailing the charge and case history, which was placed into plaintiff's personnel file.  Dkt. ## 25, at 15; 29, at 10.  Miller was also aware of plaintiff's epilepsy, and that she took medication to address it, prior to hiring her.  Dkt. ## 25, at 9; 29, at 5.  Ultimately, plaintiff was hired and began working as a dispatcher for NCSD on November 15, 2016.  Dkt. ## 24, at 7; 28, at 6.    Plaintiff was about five months pregnant at that time.  Dkt. ## 24, at 7; 28, at 6.  Plaintiff was never entirely alone in the sheriff's office, but she was alone in the dispatch area. Dkt. ## 25, at 9; 29, at 6.

On February 15, 2017, plaintiff had a seizure during her shift at work, during which she fell to the floor and lost consciousness.  Dkt. ## 24, at 8; 28, at 6.  Plaintiff was approximately 8 months pregnant at the time.  Plaintiff was hospitalized for five days, during which time her medication was adjusted.  Dkt. ## 24, at 8; 28, at 6.  Miller placed her on medical leave to address her seizures.  Dkt.

## 24, at 8; 28, at 6.  Plaintiff did not have any seizures between February 20, 2017 and the day she sought reinstatement, May 2, 2017.  Dkt. ## 24, at 8; 28, at 6.

In April 2017, while plaintiff was on medical leave, Sandy Hadley replaced Miller as sheriff of Nowata County.  Dkt. ## 24, at 8; 28, at 6.  Hadley did not know plaintiff at that time.  Dkt. ## 25, at 11; 29, at 6.  Hadley first learned that plaintiff was an employee of NCSD when plaintiff reached out about returning to work.  Dkt. ## 25, at 11; 29, at 6.  On May 2, 2017, plaintiff met with Hadley to request to return to work.  Dkt. ## 24, at 8; 28, at 6.  Plaintiff provided a note from her obstetrician that stated plaintiff was cleared to return to work with "no restrictions."  Dkt. ## 24, at 8; 28, at 6; 24-3.  This meeting was the first time plaintiff requested to be reinstated.  Dkt. ## 25, at 11; 29, at 7.  In the meeting, Hadley told plaintiff that, before Hadley reinstated her, she needed to provide a note from a neurologist stating plaintiff would not have any more seizures.  Dkt. ## 24, at 8; 25, at 13.  Plaintiff requested that NCSD pay for the examination.  Dkt. ## 25, at 13; 29, at 7.  Hadley wanted to speak with the Nowata County legal counsel regarding the matter.  Dkt. ## 24, at 9; 28, at 8.

On or about May 5, 2017, plaintiff had an appointment with her primary care physician, who issued a letter stating plaintiff "has been examined and history taken regarding previous seizure activity.  She is on medications that have effectively prevented seizures for 3 months."  Dkt. # 24-4.  The letter further states plaintiff "has the ability to perform all essential functions of a dispatching position" and lists those functions as "the ability to answer [the] phone, talk on the radio[, and] log calls."  Id.  The physician's list was based on plaintiff's description of her essential job duties.  Dkt. ## 25, at 12; 29, at 7.  At the time, the NCSD did not have a written list of the essential functions of the dispatcher position.  Dkt. ## 25, at 12; 29, at 7.  Plaintiff asserts that she requested a list from

Hadley, but that none was provided.  Dkt. # 25, at 12.  Hadley does not recollect plaintiff requesting that information. Dkt. # 29, at 7.

It is undisputed that on May 8, 2017, plaintiff met with Hadley to deliver the note from her primary care physician, and she asked again to be reinstated.  Dkt. ## 24, at 9; 25, at 12.  Later that same day, Hadley called plaintiff to tell her that she needed to meet with Hadley on May 9, 2017, at 3:00 p.m. Dkt. ## 24, at 9; 28, at 7.  The parties dispute most other aspects of the communications that occurred on May 8, 2017.  Plaintiff testified that she contacted her attorney after Hadley asked plaintiff to attend the May 9 meeting.  Dkt. ## 25, at 21; 25-1, at 28.  She testified that after her discussion with counsel, she provided Hadley with her attorney's contact information and requested that Hadley or NCSD attorneys contact her attorney to discuss the parameters of the May 9 meeting. Dkt. # 25-1, at 28.  Plaintiff further testified that neither she nor her attorney was contacted after that discussion.  Id.  Hadley states she does not recall this discussion with plaintiff, or receiving plaintiff's attorney's information. Dkt. # 25-2, at 26.

Plaintiff did not attend the May 9 meeting.  Dkt. ## 24, at 9; 28; at 6.  After May 8, 2017, plaintiff and Hadley had no further contact until May 10, 2017, when Hadley sent a termination letter to plaintiff.  Dkt. # 24-5.  The termination letter stated:

> You provided medical releases from [an obstetrician and primary care physician] stating you were released to return to work. . . .
>
> Upon reviewing your personnel file it was noted that you were not truthful on your application with yes/no questions on the last page[,] particularly asking if you had ever been arrested in the past[,] which you answered no. Documentation of Tulsa County CF-15-6539 raises concern[,] along with your hostility toward this office.
>
> Due to failure to appear for the meeting we scheduled on May 9, 2017 at 3:00 p.m. to discuss your employment with the Nowata County Sheriff's Office, this letter is

to serve you notice that your services are no longer needed and your employment is
terminated.

Id.  The letter indicates that Billy Scott (who obtained plaintiff's criminal history and put it in the

personnel file when she was hired) was the undersheriff at the time the letter was sent.  Id.  Prior to

the termination letter, plaintiff and Hadley had never discussed the Tulsa County arrest. Dkt. ## 25,

at 15; 29, at 10.  Hadley also does not recall discussing the arrest with Miller, the sheriff who hired

plaintiff.  Dkt. ## 25, at 15; 29, at 10.

## II.

Summary judgment pursuant to Fed. R. Civ. P. 56 is appropriate where there is no genuine

dispute as to any material fact and the moving party is entitled to judgment as a matter of law.

Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S.

242, 250 (1986); Kendall v. Watkins, 998 F.2d 848, 850 (10th Cir. 1993).  The plain language of

Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon

motion, against a party who fails to make a showing sufficient to establish the existence of an

element essential to that party's case, and on which that party will bear the burden of proof at trial.

Celotex, 477 U.S. at 317.  "Summary judgment procedure is properly regarded not as a disfavored

procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed

'to secure the just, speedy and inexpensive determination of every action.'"  Id. at 327.

"When the moving party has carried its burden under Rule 56(c), its opponent must do more

than simply show that there is some metaphysical doubt as to the material facts. . . .  Where the

record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there

is no 'genuine issue for trial.'"  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574,

586-87 (1986) (citations omitted).  "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the [trier of fact] could reasonably find for the plaintiff." Anderson, 477 U.S. at 252.  In essence, the inquiry for the Court is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 250.  In its review, the Court construes the record in the light most favorable to the party opposing summary judgment. Garratt v. Walker, 164 F.3d 1249, 1251 (10th Cir. 1998).

### III.

### A. Unlawful Discrimination

Plaintiff's first claim for relief (count one) is that she was terminated because of her disability.  The ADA prohibits "discriminat[ion] against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a).  Disability discrimination can be shown by direct or circumstantial evidence. See Reinhardt v. Albuquerque Public Schools Bd. of Educ., 595 F.3d 1126, 1131 (10th Cir. 2010). ADA discrimination cases based on circumstantial evidence are governed by the burden-shifting framework announced in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Morgan v. Hilti, Inc., 108 F.3d 1319, 1323 (10th Cir. 1997).  Under this framework, plaintiff bears the initial burden of establishing a prima facie case of discrimination.  Next, "defendant must offer a legitimate, non-[discriminatory] reason for the employment action. The plaintiff then bears the ultimate burden of demonstrating that the defendant's proffered reason is pretextual." Metzler v. Fed. Home Loan Bank of Topeka, 464 F.3d 1164, 1170 (10th Cir. 2006) (citations omitted). In

order to defeat a motion for summary judgment, plaintiff must show that "there is a genuine dispute

of material fact as to whether the employer's proffered reason for the challenged action is

pretextual–i.e., unworthy of belief." Randle v. City of Aurora, 69 F.3d 441, 451 (10th Cir. 1995).

Because there is no direct evidence of discrimination, the Court will apply the McDonnell

Douglas burden shifting analysis. To establish a prima facie case of discrimination under the ADA,

plaintiff must demonstrate:

> (1) that she is a disabled person within the meaning of the ADA; (2) that she is
> qualified, that is, she is able to perform the essential functions of the job, with or
> without reasonable accommodation; and (3) that the employer terminated her
> employment under circumstances which give rise to an inference that the termination
> was based on her disability.

Morgan, 108 F.3d at 1324 (internal citations omitted). Here, neither party disputes that plaintiff is

disabled under the ADA. Dkt. # 24, at 12. The parties, however, do dispute the second two elements.

Because both parties seek summary judgment on the issue, the Court must consider whether

either party has established that there is no genuine dispute of material fact as to whether plaintiff

has or has not demonstrated she is "qualified," i.e. whether "she is able to perform the essential

functions of the job, with or without reasonable accommodation" Morgan, 108 F.3d at 1324. The

ADA provides relief "only to disabled persons who are 'otherwise qualified' to perform the functions

of the job." Wilkerson v. Shinseki, 606 F.3d 1256, 1263 (10th Cir. 2010) (quoting 29 U.S.C. §

794(a)). "'Essential functions' are 'the fundamental job duties of the employment position the

individual with a disability holds or desires.'" Mason v. Avaya Communications, Inc., 357 F.3d

1114, 1119 (10th Cir. 2004) (quoting 29 C.F.R. § 1630.2(n)(1)). "The ADA does not define

'essential function' of a job, but [Equal Employment Opportunity Commission (EEOC)] regulations

provide that:

> evidence of whether a particular function is essential includes, but is not limited to:
> (i) The employer's judgment as to which functions are essential; (ii) Written job
> descriptions prepared before advertising or interviewing applicants for the job; (iii)
> The amount of time spent on the job performing the function; (iv) The consequences
> of not requiring the incumbent to perform the function; (v) The terms of a collective
> bargaining agreement; (vi) The work experience of past incumbents in the job; and/or
> (vii) The current work experience of incumbents in similar jobs."

Pesce v. New York City Police Dep't, 159 F. Supp. 3d 448, 456 (S.D.N.Y. 2016) (quoting 29 C.F.R.

§ 1630.2(n)).

Defendant argues that plaintiff failed to demonstrate that she could perform the essential

functions of the job with or without accommodation, because she refused to engage in the interactive

process that accompanies the inquiry that begins when an employee requests an accommodation.

Dkt. # 24, at 12.  Defendant argues that plaintiff's proffered doctors' notes were inadequate to assure

Hadley that plaintiff was qualified because they were not from a neurologist, as requested by Hadley.

Dkt. # 24, at 13.  Defendant points to regulations promulgated by the EEOC that interpret the ADA

requirements for support.  Because the EEOC is authorized to promulgate regulations to implement

the provisions of the ADA, courts give these regulations "a great deal of deference."  Smith v.

Midland Brake, Inc., 180 F.3d 1154, 1165 n.5 (10th Cir. 1999) (citation omitted).  Defendant states

EEOC regulations permit employers to "make inquiries or require medical examinations (fitness for

duty exams) when there is a need to determine whether an employee is still able to perform the

essential functions of his or her job."  Dkt. # 24, at 13 (quoting 29 C.F.R. Part 1630, App. §

1630.14(c)).  Defendant argues that, per the above regulation, Hadley was acting within the law

when she requested plaintiff undergo a neurological examination.  Dkt. # 24, at 13-14.  Defendant

argues that plaintiff refused the request, and thus failed to engage in the interactive process required in order to make a viable claim under the ADA.[2]  Id.

Plaintiff, in contrast, asserts that her primary care physician plainly stated she was qualified to perform the essential functions of her job, which plaintiff described to the physician.  Dkt. # 25, at 12.  Plaintiff further argues that defendant failed to engage in the interactive process by refusing to communicate with her or her attorney after plaintiff asked Hadley to contact her attorney.  Plaintiff additionally argues that she did not refuse to undergo a medical evaluation by a neurologist. Dkt. # 28, at 12.  Plaintiff states that Hadley provided no information to her regarding the neurologist appointment after plaintiff told Hadley that NCSD would be responsible for the costs.  Id.

Given the above, the Court finds that there are genuine disputes of material fact on the issue of whether plaintiff was qualified for the position of dispatcher.  The Court first notes that plaintiff

---

[2]     Defendant also argues that plaintiff was required to pay for Hadley's requested examination according to the Nowata County Employee Handbook.  Defendant states: the "handbook specifies that when an employee returns from medical leave for his or her own serious health condition, the employee must provide medical certification the he or she is fit to return to work." Dkt. # 24, at 14.  The Court finds this argument unpersuasive. Defendant cites to the Family and Medical Leave Act (FMLA) portion of the handbook, which, it argues, is instructive to plaintiff's situation and should inform the Court's analysis.  However, the portion cited details a process wherein an employee who requests leave under the FMLA must "supply appropriate medical certification." Dkt. # 24-6, at 22.  It does not mention medical certification being provided upon the employee's return.  Additionally, upon requesting FMLA leave, the handbook details a process wherein Nowata County "will notify [the employee] of the requirement for medical certification and when it is due." Id. Defendant fails to justify why no notice was given to plaintiff during her leave regarding what examination was required of her or, alternately, why notice is not warranted here.

never requested an accommodation from defendant.[3]  Plaintiff requested to be reinstated, and supplied supporting documentation that she was qualified to perform what she believed were the essential functions of the dispatcher position with no caveats.  However, defendant disputes that the qualifications plaintiff listed include "all the essential functions for the Dispatcher position."  Dkt. # 29, at 7.  Inexplicably, defendant does not identify the essential functions that plaintiff failed to include in her description.  Because the issue of whether plaintiff's list of essential functions is complete is in dispute, the Court cannot find that plaintiff was qualified for the position as a matter of law.  Similarly, because defendant did not identify any functions plaintiff did not list in her description that plaintiff could not perform, the Court cannot find that defendant has shown there is no genuine dispute of material fact as to whether plaintiff is not qualified to perform all essential elements of the dispatcher position.

Defendant also argues that plaintiff fails to state a prima facie case as to the third element of a discrimination claim under the ADA–whether plaintiff's termination arose under circumstances

---

[3]     The parties devote substantial portions of their briefs to a discussion of who caused the breakdown of the collaborative process the ADA envisions employees and employers will engage in to accommodate disabilities.  However, the parties' discussion of the "interactive process" is, at best, premature.  While it is true that "[t]o facilitate the reasonable accommodation, '[t]he federal regulations implementing the ADA envision an interactive process that requires participation by both parties,'" the "employer's duty to provide reasonable accommodations—or even to participate in the 'interactive process'" is triggered only when the employee makes "an adequate request, thereby putting the employer on notice." E.E.O.C. v. C.R. England, Inc., 644 F.3d 1028, 1048 (10th Cir. 2011).  It is "the 'employee's initial request for an accommodation [that] triggers the employer's obligation to participate in the interactive process.'" Woodman v. Runyon, 132 F.3d 1330, 1345 (10th Cir. 1997) (quoting Taylor v. Principal Fin. Grp., Inc., 93 F.3d 155, 165 (5th Cir. 1996)).  The record before the Court does not indicate plaintiff ever requested an accommodation for her disability.  She merely requested reinstatement and stated she was fully qualified without accommodation.  Unless plaintiff requested an accommodation, discussion of the interactive process is extraneous and, ultimately, defendant "cannot be held liable for failing to provide [an accommodation]." Taylor, 93 F.3d at 165.

from which discrimination can be inferred.  Defendant states that plaintiff was an at-will employee and thus could be terminated at any time and for any reason.  Dkt. # 24, at 15-16.  Defendant argues that Hadley was acting without regard to plaintiff's disability when she fired plaintiff for her absence from the May 9, 2017 meeting, stating it demonstrated insubordination.  Id. at 16.  Defendant further supports plaintiff's termination by stating Hadley terminated plaintiff upon finding allegedly false statements in plaintiff's employment application, which she discovered after reviewing her personnel file on or about May 9, 2017.  Conversely, plaintiff argues that it is obvious that plaintiff was terminated because of her disability where Hadley's own testimony makes it clear Hadley's primary concern in refusing to reinstate plaintiff were her seizures.  Dkt. ## 25, at 19; 28, at 11-12.  Plaintiff states Hadley failed to continue the discussions regarding her reinstatement by refusing to contact her attorney.  Dkt. # 25, at 4.  Finally, plaintiff states Hadley "went hunting" for reasons to terminate plaintiff by reviewing her application and failing to make inquiries into an apparent inconsistency in the file.  Id. at 24-25.

Given the circumstances surrounding the termination, the Court finds that a reasonable jury could find plaintiff has shown circumstances that reasonably give rise to an inference that the termination was based on her disability.  As a result, plaintiff has pled the third element of her prima facie claim in a manner that survives summary judgment.  However, as noted above, the summary judgment record does not support a finding that plaintiff has established a prima facie case.  At this juncture, there are disputes of material fact as to whether plaintiff has established a prima facie case–most obviously regarding the second element, where plaintiff asserts she is qualified to perform the functions of the job, and defendant disputes that fact.

12

The parties also ask the Court to decide, at summary judgment, whether defendant's stated reasons for plaintiff's termination were pretextual. Once plaintiff establishes a prima facie case of discrimination, "defendant must offer a legitimate, non-[discriminatory] reason for the employment action" in order to rebut the prima facie case. Metzler, 464 F.3d at 1170 (citations omitted). "[P]laintiff then bears the ultimate burden of demonstrating that the defendant's proffered reason is pretextual." Id. Where, as here, defendant has offered two non-discriminatory reasons for its allegedly discriminatory behavior, the burden shifts back to plaintiff to demonstrate that the reason is, in fact, pretextual. In this case, the Court finds that there are genuine disputes of material fact that preclude summary judgment as to pretext. "It is not the purpose of a motion for summary judgment to force the judge to conduct a 'mini trial' to determine the defendant's true state of mind. So long as the plaintiff has presented evidence of pretext (by demonstrating that the defendant's proffered non-discriminatory reason is unworthy of belief) upon which a jury could infer discriminatory motive, the case should go to trial." Randle v. City of Aurora, 69 F.3d 441, 453 (10th Cir. 1995).

Here, plaintiff argues that termination for missing a meeting to discuss her employment is pretextual, where Hadley never contacted plaintiff's attorney regarding the May 9 meeting and, thus, failed to communicate prior to the meeting and ended the interactive process. Dkt. # 28, at 11. Further, plaintiff argues that pretext is evident where Hadley reviewed her personnel file, found one alleged error, and used it as an additional reason to terminate plaintiff without making any inquiries into whether anyone had knowledge before her employment regarding the apparent inconsistency. Plaintiff notes that Hadley could have reached out to resources both in her own office, such as undersheriff Billy Scott, or outside the office, such as former-sheriff Miller, who both had

information regarding plaintiff's application, arrest, and subsequent dismissal of the charges. Dkt. # 25, at 24-25.

While defendant denies that plaintiff's disability was the reason for her termination–instead citing her insubordination for missing the May 9 meeting, and the inconsistent information in her file regarding her arrest, as the reasons for plaintiff's termination (Dkt. ##24, at12-13; 29, at 11)–the ultimate question of motive is "particularly inappropriate for summary judgment disposition." Romero v. Union Pac. R.R., 615 F.2d 1303, 1309 (10th Cir. 1980); see also Washington v. Garrett, 10 F.3d 1421, 1433 (9th Cir.1993) ("If the plaintiff succeeds in raising a genuine factual issue regarding the authenticity of the employer's stated motive, summary judgment is inappropriate, because it is for the trier of fact to decide which story is to be believed."). As a result, the Court denies defendant's motion for summary judgment as to count one in its entirety (both as to prima facie case and pretext) and denies plaintiff's motion for summary judgment as to count one on the issue of whether she has established a prima facie case as a matter of law.

## B. Retaliation

Plaintiff's second claim for relief is for retaliation under the ADA, and both parties seek summary judgment on the claim. The ADA prohibits discrimination "against any individual because such individual has opposed any act or practice made unlawful by this chapter . . ." 42 U.S.C.A. § 12203(a). To establish a prima facie case of retaliation under the ADA, a plaintiff must show (1) she "engaged in protected opposition to discrimination, (2) that a reasonable employee would have found the challenged action materially adverse, and (3) that a causal connection existed between the protected activity and the materially adverse action." EEOC v. Picture People, Inc., 684 F.3d 981, 988 (10th Cir. 2012). "If the plaintiff establishes a prima facie case of retaliation, the burden shifts

14

to the defendant to show that it had a legitimate, non-discriminatory reason for the adverse employment action." Rhames v. City of Bixby, No. 16-CV-0747-CVE-JFJ, 2018 WL 1863652, at *9 (N.D. Okla. Apr. 18, 2018)[4] (citing Picture People, Inc., 684 F.3d at 988).  If defendant provides a legitimate and non-discriminatory reason for the alleged adverse action, then the burden shifts back to plaintiff to demonstrate that the defendant's non-discriminatory rationale is merely pretext.  Id.

As an initial matter, the parties dispute whether plaintiff engaged in any protected activity that could establish the first element of a retaliation claim.  Plaintiff argues that defendant retaliated against plaintiff for requesting reinstatement, for informing Hadley that any requested neurologist examination would be at the NCSD's expense, and for attempting to involve her attorney in the discussion regarding her reinstatement.  Dkt. # 25, at 22.  Plaintiff does not make any attempt–in either her motion or her response to defendant's motion–to show that either requesting reinstatement, or informing Hadley that defendant would be responsible for the cost of a neurological exam, qualifies as protected activity.  Dkt. ## 25, at 22-23; 28, at 14-15.  Accordingly, the Court finds that plaintiff has failed to show that either of those actions constitute "protected opposition to discrimination" under the first prong of the analysis.

Plaintiff does, however, attempt to show that "the mere hiring of counsel to assist the employee in a matter arising under one of the federal anti-discrimination statutes and making the employer aware of that fact qualifies as protected activity." Dkt. # 28, at 15.  Plaintiff cites to Miller v. Eby Realty Grp., 241 F. Supp. 2d 1247, 1253 (D. Kan. 2003), for support; however, that case is not persuasive here.  In Miller, plaintiff alleged retaliation occurred under the Age Discrimination

---

[4]      Unpublished decisions are not precedential, but they may be cited for their persuasive value. See FED. R. APP. 32.1; 10TH CIR. R. 32.1.

15

in Employment Act (ADEA) "<u>after</u> plaintiff informed defendant he was hiring legal counsel <u>to pursue his discrimination claim</u>." <u>Miller</u>, 241 F. Supp. 2d at 1253 (emphasis added).  Here, plaintiff does not allege she alerted defendant that she was pursuing any type of discrimination claim.  Hiring an attorney to attend a meeting is not per se protected activity under the ADA.  <u>Klaes v. Jamestown Bd. of Pub. Utilities</u>, No. 11-CV-606, 2013 WL 1337188, at *10 (W.D.N.Y. Mar. 29, 2013).  While retaining counsel may constitute protected activity if plaintiff or plaintiff's counsel notifies defendant that plaintiff is being discriminated against on the basis of disability, or that plaintiff intends to assert a claim of disability discrimination, without those notifications the activity is not necessarily protected.  <u>Id.</u>  Plaintiff has not stated that such notifications were conveyed to defendant at any point.  Absent those allegations, plaintiff has not shown there is a genuine dispute of material fact as to whether  plaintiff or plaintiff's counsel ever made defendant aware that plaintiff hired counsel to pursue disability discrimination.  Accordingly, the Court finds that plaintiff's claims of retaliation fail at the first step of the analysis as a matter of law.  As a result, defendant's motion for summary judgement on the retaliation claim should be granted, and plaintiff's motion on the same claim is denied.

**IT IS THEREFORE ORDERED** that defendant's motion for summary judgment (Dkt. # 24) is **granted in part** as to the retaliation claim (count two), and **denied in part** as to the unlawful discrimination claim (count one).  Plaintiff's motion for summary judgment (Dkt. # 25) is **denied. An amended scheduling order will be entered.**

**DATED** this 14th day of December, 2020.

CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE

16